UNITED STATES DISTRICT COURT **ORIGINAL**
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 29 2012 ★

LONG ISLAND OFFICE

-----------------------------------------------------------X

PHILIP DOMINGUEZ

        PLAINTIFF,

COMPLAINT

- Against -

AMON, CH.J.

METROPOLITAN TRANSPORTATION AUTHORITY (MTA),

BLOOM, M.J.

LONG ISLAND RAILROAD COMPANY

Jury Trial Demanded

GEORGE FARRELL

MICHAEL BARTO

**CV 12 - 1694**

DEFENDANTS.

-----------------------------------------------------------X

I.    Parties:

     Plaintiff Philip Dominguez resides at 901 Avenue H apt. 2-O, Brooklyn NY 11230.

     Defendant M.T.A. Long Island Railroad Co. resides at Jamaica Station, Jamaica NY

     Defendant Michael Barto is employed at LIRR Jamaica Station, Jamaica NY

     Defendant George Farrell is employed at LIRR Jamaica Station, Jamaica NY

II.   The jurisdiction of the court is invoked pursuant to federal law and Title VII of the Civil Rights Act of 1964.

III.  Statement of Claim.

1.   I am the charging party and submit this affidavit, on behalf of myself and other similarly situated Hispanic and Black employees, in support of my charge of race and

national origin discrimination against my employer, Metropolitan Transit Authority, Long Island Rail Road Company ("LIRR").

2. I am a 28 year old Puerto Rican male, and I currently reside in New York.

3. I worked for LIRR from July 2007 through May 1, 2009. Before coming to work at LIRR, I was employed as a Block Operator and Train Director for Amtrak from May 2004 through June 2007, and as a Train Dispatcher (Trainee) for New Jersey Transit from December 2003 through September 2004.

4. I was hired as a Block Operator by LIRR in July 2007. During my first year of probationary employment with LIRR, I received a satisfactory performance review for every quarter, and became a Block Operator/Train Director in July 2008.

5. Throughout my employment by LIRR, I have been discriminated against based on my race and ethnicity on a consistent basis: I have been improperly accused of wrongdoing on at least three occasions; I have been subjected to unduly harsh discipline for minor infractions; and I was ultimately terminated for discriminatory reasons.

6. The first time I was disciplined by LIRR was after an incident that occurred on the night of September 10, 2008. I was a Trainee at the time, and was working alongside a Train Director at the Valley Stream LIRR Control Tower. While the Train Director was taking a break, I received a telephone call from a Train Conductor, who informed me that he had bypassed the Rosedale station. Not knowing what else to do, I took the Conductor's telephone number and informed him that he would be called back. I was later charged with improperly handling the situation, because I had allegedly not followed protocol and called the Control Center in Jamaica.

7. Though I did not believe I was at fault in this incident, I signed a trial waiver at the behest of my union representative. I accepted a 20 day suspension without pay, and served 10 days. As a result of this incident, I was unable to qualify for the Control Tower positions at the Valley Stream Tower. The Train Director under whose supervision I was working, an African American man named Fred Butts, faced similar charges as I did, and accepted a 30 day suspension without pay. The Train Conductor, the employee actually responsible for bypassing the station was a white man, who on information and belief, was treated more leniently than me.

8. The second time I was disciplined was after an incident that took place in November 2008. I was working an overnight shift as Train Director at the West Side Yard. I received unclear instructions from a Dispatcher at Penn Station, and sent a train on to the wrong track. As a result, my train had to be backed up and rerouted, - a routine event that caused only an eight minute delay in the train's departure. The train caught up the lost time en route, however, and arrived at all subsequent stations on time.

9. As with the earlier incident, I strongly believed that I was not at fault. I followed instructions as I understood them, and no service disruption resulted from my actions. Nonetheless, I was formally charged with a train misroute. Although I expressed a desire to go to trial to defend myself, on the date of the trail, I was again urged to take a trial waiver by my union representative. This time, I received a 25 day suspension without pay in exchange for signing the trial waiver.

10. The dispatcher whose unclear instructions I followed, a white man of Italian descent named Vinny Lupis, was never charged with any violation as a result of this incident. It is noteworthy that Mr. Lupis had a significant disciplinary record and was in fact on probation at the time this incident occurred.

11. In or around January 2009, Michael Barto, Supervisor of Train Movement, a white man, commenced an investigation into the alleged falsification of my employment application. On information and belief, Mr. Barto initiated this investigation on his own initiative after having been informed during a casual conversation with a co-worker that I had been fired from my previous job with New Jersey Transit (NJT). I had never met Mr. Barto prior to January 2009.

12. The circumstances surrounding Mr. Barto's investigation suggest that the decision had already been made to terminate my employment, and the LIRR was simply looking for a reason to justify my termination. As an initial matter, there was no reason for Mr. Barto or anyone else to be reviewing my personnel records. Moreover, the information on which Mr. Barto based his decision to investigate me was false: I was not fired from my job with NJT. Rather, I was briefly disqualified from NJT's Train Dispatcher Training Program in February 2004. After filing a discrimination complaint with that agency's internal Equal Employment Opportunity, I was reinstated to my prior position with full back pay in August 2004. I voluntarily resigned my position with NJT in September 2004, as I correctly reported on my LIRR employment application.

13. That I had resigned and was not fired was confirmed, in writing, by NJT in a letter sent to Mr. Barto in March, 2009. Nonetheless, even after the LIRR learned that the information upon which Mr. Barto had based his decision to investigate me was false, LIRR nonetheless continued to pursue its investigation in order to come up with new accusations to make against me. On information and belief, Mr. Barto made additional inquiries as to my NJT job title and the identify of my supervisor. Based on information received in response to his inquiries, I was then formally charged with providing a false title and reference on my LIRR employment application.

14. On my LIRR job application, I stated that my job title was "Train Dispatcher," and that my supervisor was Christopher Scull. Neither statement was false. I was hired by NJT as a Train Dispatcher (Trainee), and my failure to specify that I was Trainee was not a misrepresentation but merely a non-material omission. Christopher Scull, Assistant Chief Dispatcher, was indeed my direct supervisor while I was employed by NJT. The individual that LIRR later claimed I should have listed as my supervisor, Richard Krason, was a much higher level employee with whom I had very little direct contact. My decision to list Mr. Scull rather than Mr. Krason was based on my belief that Mr. Scull was more familiar with my daily job performance, and was in a better position to speak on my behalf as to my qualifications.

15. Moreover, neither of the alleged inaccurate statements had any bearing whatsoever on my qualifications for or ability to perform the job of Block Operator for LIRR. In fact, after leaving NJT, I had been employed by Amtrak for more than three years as a Block Operator and Train Director., with a perfect record for safety and rules adherence. Even if the alleged inaccuracies regarding my prior employment with NJT had been false, they were trivial and did not merit terminating my employment.

16. LIRR arranged for a "trial" of the charges against me, on March 24, 2009, with

Mr. Barry, serving as prosecutor. The "judge," or decision-maker, was a white woman. The decision was a foregone conclusion: I lost, and LIRR terminated my employment effective May 1, 2009.

17. In addition to the foregoing, LIRR has engaged in a pattern and practice of favoring non-minority employees over minority employees. In particular, LIRR has engaged in a pervasive process of meting out disparate discipline based upon race and national origin. The following examples are noteworthy, although this list is by no means exhaustive of LIRR's lenient treatment of white, or non-minority, employees who have committed rules or safety infractions:

- Jeremy Fortner, a white employee with approximately one year more seniority than me, was charged with multiple disciplinary infractions, including misrouting trains on more than one occasion and allowing a train to bypass a red signal. Despite these relatively severe infractions, Mr. Forner was never suspended for more than 10 days, and was ultimately reassigned to a station with less traffic rather than being disciplined.

- Tommy Ecberg, a white employee, was charged with misrouting a freight train, an infraction that could have caused significant disruption and structural damage to the Hicksville Station. Nonetheless, Mr. Eckert was never disciplined or suspended.

- Kevin Kearns, a white employee, was charged with misrouting a train in service with passengers on board, an infraction mores serious than mine, but received no discipline as a result.

- Jason Brennan, a white employee, was charged with misrouting trains on two separate occasions, but received no discipline as a result.

18. In contrast, minority employees have been subject to strict discipline for minor infractions. The following examples are noteworthy:

- David Whitehead, an African American male, was fired under circumstances remarkably similar to mine: an LIRR employee saw fit to commence an investigation into Mr. Whitehead's prior employment with the New York City Transit Authority, and uncovered disciplinary issues in his personnel records from that agency. Mr. Whitehead was fired, but subsequently sued LIRR for discrimination and was reinstated with full back pay and seniority.

- Marie Roumage, a black Haitian woman, was fired after being charged with a train misroute.

- Danny Bilbo, a Colombian man, was charged with misrouting track workers, and although this was his first disciplinary infraction, was made to resign.

- Linda Maldonado, a Puerto Rican woman, was fired and subsequently reinstated after filing lawsuit against LIRR.

- Wayne Miles, an African American male with approximately 15 to 20 years working for LIRR, was given a 10 day suspension for failing to give a train order,

a very minor offense which subsequently corrected with a telephone call and which ultimately had no adverse impact on service.

- Fred Butts, an African American male and the Tower Operator involved in the September 10, 2008 incident described herein, was given a 30 day suspension for failing to follow protocol.

19. Of approximately 150 to 190 Block Operators employed by the LIRR, it is estimated that less than 10% are Hispanic. Moreover, within the Block Operators Craft, only two Hispanic employees hold higher level, "official" positions. These statistics strongly suggest a discriminatory bias in the hiring and/or promotion of employees

20. Based on the foregoing, I believe that the LIRR singled me out and discriminated against me based on my race and national origin. Moreover, the LIRR has engaged in a pattern and practice of discriminating against minority employees by providing favorable treatment to non-minority employees in the Block Operators Craft..

21. Accordingly, I request that the court finds the LIRR violated, and continues to violate Title VII of the Civil Rights Act of 1964.

22. The foregoing claim is subject to be supplemented and/or amended at a later date pursuant to the Federal Rules of Civil Procedure.

IV. Remedy

I respectfully request that I be reinstated as an employee to the Long Island Railroad without prejudice to my previous position, without impact or impairment to seniority and a clean employment record. I respectfully request to be reimbursed for three (3) times of all time, wages, overtime and benefits lost. I respectfully request damages for pain, suffering, lost reputation, and hardship. I respectfully request my railroad retirement and MTA pension be amended to include any time lost as time worked and credited for pension purposes. I further respectfully request consideration and preference over other candidates for transfer to a different operating craft within the railroad, with credit from initial date of LIRR employment for wage and benefit calculations. Finally, I respectfully request a letter of apology from the defendants for their individual roles in resulting in discrimination against me and my dismissal.

03/28/2012

DATE

PHILIP DOMINGUEZ

718-753-1126

TELEPHONE NUMBER

EEOC Form 161 (11/09)       **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Philip Dominguez<br>901 Avenue H<br>Apt 20<br>Brooklyn, NY 11230 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2009-04196 | Ashraf Ahmed,<br>Investigator | (212) 336-3781 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)    _____    12/28/11
                 Kevin J. Berry,                    (Date Mailed)
                 District Director

cc:  **MTA LONG ISLAND RAILROAD**            Jennifer L. Smith
     **Mary Jennings Mahon, V.P. General Counsel**    BERANBAUM MENKEN BEN-ASHER & BIERMAN
     Jamaica Station                          LLP.
     Jamaica, NY 11435                        80 Pine Street
                                              32nd Floor
                                              New York, NY 10005